THE AMERICAN NATIONAL BANK, Respondent, v. DANIEL KLOCK, JR., *et al.*, Appellants.

### Kansas City Court of Appeals, May 14, 1894.

1. **Assumption of Mortgage Debt:** NON-NEGOTIABLE: DEFENSE. The assumption by a grantee of a mortgage debt by accepting a conveyance from the mortgagor reciting such assumption, does not place such grantee in a worse position when sued by the third party for whose benefit the promise is made, than if he had been sued by the grantor in the deed; and the third party is in no better position than the original grantor since his right is a derivative right and he

stands in the shoes of the promisee; and in the absence of estoppel the party assuming the debt could avail himself of any defense which would lie in his favor, were he sued by the original promisee.

2. ———: ———: ESTOPPEL. In this case there is no element of estoppel, since it is agreed that the plaintiff had no knowledge of the assumption at the time it purchased the notes assumed although the deeds containing the assumption had long prior thereto been of record.

3. ———: GRANTEE: PARTY TO THE SCHEME. Though in this case the defendants can not be held on the ground that their promise to the original mortgagor is negotiable, nevertheless it appears from the evidence that they assented to and adopted, in its beginning and end, the original scheme whereby, by the means of several conveyances back and forth through certain "straw men," the land in question, with intervening mortgages, was conveyed back to themselves and they accepted their portion of the secured notes and deeds and held them claiming title and possession thereunder; yet, since the defendants obtain nothing by the deeds save their own land conveyed back to them, the decision in this case is put upon other grounds.

4. ———: CONSIDERATION: PROTECTION OF GRANTOR: GRANTEE'S FRAUD. While the assumption of a debt owing by the grantor is generally a part of the consideration which the grantee is to pay for the land, it is still also a protection to the grantor on his original liability, and he can enforce it as also the third party, and where the grantor can enforce it, such assumption inures by operation of law to the third party beneficiary and his assignees, and the assignee of such third party who purchases the negotiable note evidencing the debt before maturity can enforce the same against the grantor even though the third party's fraud would defeat an action in his own favor. In this case though the grantor did not know of the clause of assumption in his deed yet it will be enforced, since it appears he was to be protected in some way.

5. ———: ———: SURETY. In equity the assumption of the grantor's debt in the conveyance makes him surety to the grantee and whatever securities the debtor grantor thereby attains is available to the creditor.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Haff & Van Valkenburgh* for appellants.

(1) A grantee may make the defense that a clause of assumption was inserted in the deed fraudulently or by mistake or in violation of the agreement between grantor and grantee. *Flagg v. Munger*, 9 N. Y. 483; *Dyermand v. Chamberlain*, 22 Hun, 110–114; *Vrooman v. Turner*, 69 N. Y. 280; *Kilmer v. Smith*, 77 N. Y. 231; *Trustees of Northern Dispensary of N. Y. v. Merriam*, 59 How. Prac. 226; *Real Estate Trust Company v. Balch*, 45 N. Y. 528; *Dunning v. Leavitt*, 85 N. Y. 36, 37; *Crowe v. Lewin*, 95 N. Y. 423; *Loeb v. Willis*, 100 N. Y. 235; *Parker v. Jenks*, 36 N. J. Eq. 398; *Bull v. Titsworth*, 29 N. J. Eq. 73; *Benedict v. Hunt*, 32 Iowa, 28; *Fuller et al. v. Lamar*, 53 Iowa, 477; *Wheat v. Rice*, 97 N. Y. 296; *Ellis v. Harrison*, 104 Mo. 278; *Saunders v. McClintock*, 46 Mo. App. 216; *Drury v. Hayden*, 111 U. S. 223; *Ins. Co. v. Hanford*, 143 U. S. 187. We believe that under the true theory of the law the defense that no contract of assumption ever existed between the original parties can be made by the grantee in the deed against any and all parties whomsoever. In states where the doctrine of equitable subrogation prevails, this is unquestionably true. *Parker v. Jenks*, 36 N. J. Eq. 398; *Bull v. Titsworth*, 29 N. J. Eq. 73. And in many states where the second doctrine prevails, viz., that the beneficiary may sue the promisor directly, this same defense has been frequently upheld. *Flagg v. Munger*, 9 N. Y. 483; *Dyermand v. Chamberlain*, 22 Hun, 110–114; *Vrooman v. Turner*, 69 N. Y. 280; *Kilmer v. Smith*, 77 N. Y. 231; *Trust Co. v. Balch*, 45 N. Y. Superior Court, 528; *Garnsey v. Rogers*, 47 N. Y. 233; *Crowe v. Lewin*, 95 N. Y. 423. The case of *Wheat v. Rice*, 97 N. Y. 296

as well as the foregoing case of *Crowe v. Lewin* are cited approvingly by the late Missouri case of *Ellis v. Harrison*, 104 Mo. 278. (2) Whatever right of action a third party to such an engagement may acquire by virtue of its terms against either of the directly contracting parties, it is clear that on principle such right can not be broader than the party to the contract (through whom the right of action is derived) would have in event of its breach. To state this in another form, the right of action by any outside beneficiary for whose advantage a contract is made between two other persons is entirely subordinate to the terms of that contract as made. Such beneficiary can not acquire a better standing to enforce the agreement than that occupied by the contracting parties themselves. *Ellis v. Harrison, supra; Crowe v. Lewin, supra; Wheat v. Rice, supra*. (3) It is clear, then, that whether or not this defense of non-assumption can be made at all times and against all parties, as would appear from the decisions above cited, this court, and in fact all courts, clearly recognizes the fact that nothing short of an estoppel will deprive any injured grantee from interposing this defense. By such estoppel we mean where the grantee has unquestionably held out to others the fact of the assumption and those others with the knowledge of this fact have acted upon it and parted with money on the faith that such an assumption existed. *Saunders v. McClintock*, 46 Mo. App. 216. Since the preparation of the foregoing we find ourselves sustained in this position by a late case decided by our supreme court, *Ellis v. Harrison*, 104 Mo. 270. *Drury v. Hayden*, 111 U. S. 223. (4) The evidence shows that no contract of assumption ever existed between the appellants and O. H. Queal or the "straw men" who executed the notes and the quitclaim deeds.

*C. O. Tichenor* for appellants.

(1) The third party gets his rights under and through the actual parties and hence his rights can not be broader or more perfect than theirs. For a long time, courts refused to let the third party sue, because of lack of privity. Such a right to sue on a covenant in a deed was not recognized by our supreme court until 1873. *Rogers v. Gosnell*, 51 Mo. 466. Is it not one of the curiosities of the law, that after struggling for years, to find a way to allow the third party to sue at all, it should be held that he has greater rights than the parties to the contract? That he can recover upon a contract, which would be held void for fraud or mistake if sued upon by a party making it? *Ankeny v. Clark*, 148 U. S. 358. (2) The rights of a third party in a contract in which he is interested are subject to limitations. *Howsman v. Trenton Water Co.*, 24 S. W. Rep. 784; *Life Ins. Co. v. Hutchings*, 100 Ind. 497 and cases cited in opinion; *Amonette v. Montague*, 75 Mo. 49. (3) There can be no question but that the contract of assumption must be valid. *Dunning v. Leavitt* 85 N. Y. 41; *Flagg v. Munger*, 5 Seld. 501; *Saunders v. McClintock*, 46 Mo. App. 217.

*Warner, Dean, Gibson & McLeod* for respondents.

(1) Upon the pleadings and the facts in this case, the declarations given by the court correctly stated the law. *Fitzgerald v. Barker*, 96 Mo. 661; *Hagerman v. Sutton*, 91 Mo. 519; *Leavitt v. La Force*, 71 Mo. 353; *Keller v. Ashford*, 133 U. S. 610; *Fitzgerald v. Barker*, 85 Mo. 13. (2) Where defendants accept a deed containing a clause of assumption of an incumbrance upon property conveyed by said deed, and claim and assert title under said deed and continue to so claim down to

and at the time of suit upon said clause of assumption, in order to defeat a recoverv by an innocent holder for value before maturity of said incumbrance, said holder having acquired said incumbrance long subsequent to the execution, delivery, acceptance and recording of the deeds containing said assumption clause, on the ground that said clause of assumption was inserted by fraud, it is incumbent upon defendants to show that plaintiff, the holder of said incumbrance, had knowledge of and was a party to said fraud. *Crow v. Beardsley*, 68 Mo. 435; *Fitzgerald v. Barker*, 96 Mo. 661. (3) The grantee named in a deed of real estate by the terms of which he assumes the payment of an incumbrance thereon, is liable to the holder of the incumbrance for a breach of that agreement, although he is not shown to have had any knowledge of the agreement in the deed at the time of its execution, if after being informed of its terms he continues to claim title under it, and remains in the possession of the property, claiming title under the deed. *Keller v. Ashford*, 133 U. S. 610; *Coolidge v. Smith*, 129 Mass. 554; *Locke v. Homer*, 131 Mass. 93; *Muklig v. Fiske*, 131 Mass. 110; *Blyer v. Monholland*, 2 Sandf. Ch. 478; *Parkinson v. Sherman*, 34 N. Y. 88; *Gifford v. Father Matthew T. A. B. Society*, 104 N. Y. 139; *Gifford v. Corrigan*, 117 N. Y. 257.

ELLISON, J.—This action is founded on three negotiable promissory notes, two executed by Clark O. Simpson and the third by Gillies, all payable to O. H. Queal, secured by mortgage on certain real estate in Kansas City. Defendants are not the payors but their liability is sought to be established by reason of their having assumed (as is alleged) the payment of the notes. The judgment below was for plaintiff. Plaintiff obtained the notes before maturity as collateral

security for a certain other note executed· to plaintiff for· money borrowed by O. H. Queal, the payee therein.

It appears that Queal and defendants were joint owners of twenty acres of land in Jackson county, Missouri, and that by an arrangement between them it was agreed that the lands should be platted and laid off into an addition to Kansas City, to be known as Horton Heights. It was further arranged between them that the lots thus laid off should be mortgaged to the amount of $10 per foot, making an incumbrance of $500 on each lot. To carry out this arrangement, these parties deeded the land to Clark O. Simpson and he, retaining a portion thereof, divided the remainder by deeding to other parties. Each of these parties then executed, separately, the notes (of which those in suit are a part) and mortgages, payable to Queal, on the respective portions of the property thus held by them. Queal retained his one-third of the notes and indorsed, without recourse, the remaining two-thirds to these defendants who received the same in New York, where they resided, in due course of mail. Simpson and these other parties to whom he had conveyed, then conveyed the property back to Queal .and these defendants by quitclaim deeds—each deed specifying that each grantee took an undivided one-third interest. Each deed contained a clause assuming the payment of the notes secured·by the mortgages on the lots. The clause in the deed from Simpson (the other· deeds containing similar clauses) is as follows: "The grantees herein in accepting this deed assume and agree to pay as a part of the above named consideration eighteen certain notes of unequal amount aggregating the sum of $8,900, secured on the above described lots by eighteen deeds of trust, one deed of trust securing one note on each

lot, dated January 1, 1889, given by Clark O. Simpson," duly recorded, etc. It should be here stated that Simpson and the others were merely acting as instruments of Queal and these defendants in thus carrying out the original arrangement. These quit-claim deeds thus executed to Queal and these defendants were recorded and forwarded to defendants by mail. Defendants received them in due course, examined them, though not critically as they did not discover the clause above set forth assuming the incumbrances until nearly three years thereafter, being some two or three months prior to the institution of this suit.

In making and carrying out this arrangement we shall assume defendant's contention to be the fact, that they were moved thereto by a desire to accommodate Queal, their co-owner, he having been their agent in Kansas City in other real estate transactions or speculations, their preference being to dispose of the land by sale directly to purchasers; and also that Queal was the active party in consummating the arrangement.

It was agreed between the parties at the trial that while plaintiff obtained the notes in suit after the quitclaim deeds were executed and recorded, it had no knowledge in fact, until shortly before bringing suit, of the clause of assumption. And it was further agreed that plaintiff did not know that there was any question made about the assumption until defendants filed their amended answer in the cause.

I. It is a part of the contention in behalf of plaintiff that the promise of these defendants contained in the clause of assumption in the quitclaim deeds, is a negotiable promise as applied to the notes to which the promise relates, and that since plaintiff is an innocent holder of the notes for value before maturity, any equities between the original parties are not available

as against plaintiff. In support of this contention plaintiff relies upon the case of *Fitzgerald v. Barker*, 96 Mo. 661. It must be admitted that that case, at first view, supports the contention. But we are much disinclined to say that such a promise possesses the negotiable qualities, incidents and attributes which pertain to the note to which it relates. The promisor who thus assumes the payment of a note by accepting a deed in which the assumption is recited, is in no worse position when sued by the third party for whose benefit the promise is made than if he had been sued by the grantor in the deed. In the absence of estoppel, such third party in attempting to enforce the promise for his own benefit, is in no better position than the original party since his right is a derivative right and he stands in the shoes of the promisee. *Ellis v. Harrison*, 104 Mo. 278; *Flagg v. Munger*, 9 N. Y. 483; *Vrooman v. Turner*, 69 N. Y. 280; *Kilmer v. Smith*, 77 N. Y. 231; *Dunning v. Leavitt*, 85 N. Y. 30; *Crowe v. Lewin*, 95 N. Y. 423; *Loeb v. Willis*, 100 N. Y. 231; *Parker v. Jenks*, 36 N. J. Eq. 398; *Bull v. Titsworth*, 29 N. J. Eq. 73; *Benedict v. Hunt*, 32 Iowa, 27; *Wheat v. Rice*, 97 N. Y. 296; *Drury v. Hayden*, 111 U .S. 223; *Ankenry v. Clark*, 148 U. S. 358.

By an examination of the case of *Fitzgerald v. Barker* in the different reports in which it is found, it will be noticed that the note assumed was purchased by the plaintiff in that case after the deed reciting the assumption of the note was filed for record. Presumably the purchase was made with a knowledge of its having been assumed by the grantee in the deed and on the faith thereof. It was from this fact that we distinguished the case of *Saunders v. McClintock*, 46 Mo. App. 216, from *Fitzgerald v. Barker*. In *Saunders v. McClintock* we, in effect, held that unless the case presented an element of estoppel in its essential

facts the party assuming the debt could avail himself of any defense which would lie in his favor were he sued by the original promisee, and to that view we adhere.

But it may be suggested here that the same element of estoppel exists in this case as did in the *Fitzgerald case*, since the evidence here shows the deeds to these defendants containing the clause assuming the notes were recorded before plaintiff obtained the notes. This, however, is met by the stipulation to which we have referred wherein it was agreed that plaintiff had no knowledge of the deeds or the assumption at the time it purchased the notes. We can not allow ourselves, therefore, to presume that plaintiff acted upon the assumption clause in the deed of which it had no knowledge. If the broad language used in *Fitzgerald v. Barker*, is to be construed as intending to assert that the promise assuming an incumbrance on the land represented by a negotiable note, partakes of all the negotiable character of such commercial paper we believe such meaning is limited and restrained by the more recent case of *Ellis v. Harrison, supra*.

II. Notwithstanding the foregoing, the judgment for plaintiff should, from other considerations, be affirmed. It was conclusively shown at the trial that the scheme aforesaid, whereby the land was divided into lots and conveyed to Simpson and by him to the other "straw men," as defendants term them, including Simpson; and whereby these notes and mortgages on the lots to secure them, were executed by the "straw men" to Queal and then the lots deeded back to Queal and defendants; Queal transferring to defendants their portions of the notes, amounting to $16,000, each; was the scheme of these defendants as well as of Queal. Queal, we have already conceded, was the original deviser of the scheme, but it was nevertheless the

scheme of defendants, for *they assented to it and adopted it in its beginning and end.* They accepted their portion of the notes secured on the land, with all the advantages which might have resulted from that mode of utilizing the land. They accepted the deeds and held them for nearly three years claiming title and possession of the property conveyed. In other words, they claim and hold the title and possession under these deeds but reject that portion of the deeds containing the clause of assumption as a part of the consideration; that is to say, they accept the benefits and reject the burdens of the transaction which was consummated by the deeds. They. have never sought to annul the transaction as being a fraud practiced upon them by Queal. They have never sought to re-form the deeds containing the clause of assumption. On the contrary they did not dispute or question their liability thereunder in their original answer. But they contend that they did undertake to re-form the deeds by a prayer to that effect in their amended answer in which they state the imposition on them. We attach no importance to this, since it has not been asserted in a manner to have any effective force towards the correction of the deeds. They took no steps to bring in the proper parties to such an issue. The grantors in the deeds, to say nothing of Queal, one of the grantees, ought certainly to be brought into court if the deeds are to be annulled or re-formed.

This, then, being the state of the case as presented by defendants, they might, perhaps, be held to have adopted the transaction *in toto* and to be liable on the clause in the deed assuming the notes. *Keller v. Ashford,* 133 U. S. 619, 620; *Coolidge v. Smith,* 129 Mass. 554; *Parkinson v. Sherman,* 74 N. Y. 88; *Gifford v. Father Matthew, etc., Society,* 104 N. Y. 139; *Gifford v. Corrigan,* 117 N. Y. 257. These authorities may be

thought not altogether applicable to the facts of this case, since they are cases where the grantee obtained title and possession to lands by reason of the deed and it was held that he could not repudiate the clause of assumption and yet retain the land; while in case at bar the land which these defendants obtained by the deeds was in reality their own land, since it had merely been conveyed to the "straw men" aforesaid for the purpose of carrying out the scheme. In other words, it may, from this fact, be suggested that defendants obtained nothing by the deeds which it is their duty to surrender. And for this reason we prefer not to put our decision on this ground, since there is yet a stronger reason why defendants can not escape liability to this plaintiff.

It should be kept in mind in considering the question that there is no fraud charged upon Simpson (or the other grantors to whom Simpson conveyed) in the execution of the quitclaim deeds, including the insertion of the assumption clauses. The only fraud charged is the alleged fraud of Queal, defendant's co-owner, and defendants' agent in carrying out and manipulating the scheme. The law invoked by defendants and to which we have called attention in the first part of this opinion (stated in its broadest sense in behalf of defendants) is, that the right of a third party to enforce the promise of assumption made by a grantee to a grantor is a derivative right, and is only such right as the grantor has or would have against the grantee, and that when the grantor could not enforce the promise of assumption against the grantee, then a third party could not. Does the case made by defendants enable them to successfully invoke this principle? I think it does not. While the assumption of the debt owing by the grantor is generally a part of the consideration which the grantee is to pay for the land which

he purchases, it is also a protection to the grantor on his original liability. The grantor can enforce it as a promise made to him, and whenever it is a valid promise or assumption as it relates to him, the third party for whose benefit the law implies the promise was made may likewise enforce it. In this case there is no doubt whatever that Simpson and the other grantors could enforce the promise of assumption of these defendants. Simpson and the other grantors have not been guilty of any fraud, the only fraud charged is against Queal, who was the agent of defendants. The assumption can not be questioned as to these grantors; it stands for their protection, and being valid as to them it inures, by operation of law, to this plaintiff. In stating this we are not unmindful of a branch of this rule of law to the effect that there must be a debt or duty owing by the grantor (the promisee) to the third party who seeks to enforce the grantee's promise to the grantor. *Phœnix Ins. Co. v. Trenton Water Co.*, 42 Mo. App. 118; *Howsman v. Trenton Water Co.*, (supreme court of Missouri, not yet reported). This rule is invoked by defendants. The effect of their insistence is that Queal is the third party and that since Simpson, the grantor and promisee, would not be held to owe Queal under the circumstances of this case, therefore, the promise or assumption by these defendants can not be made available against them. This we could readily concede if Queal had *remained* the third party for whose benefit the law assumes defendants' promise was made. But the notes were negotiable notes, and have been transferred to plaintiff, thus perfecting and fastening the debt against Simpson and the other grantors, their promise being to pay to whomever the notes might be indorsed before maturity. We have conceded to defendants the propositions maintained by the cases they cite, but we distinguish them

from this case. It may, however, be suggested that these grantors signed the deeds without knowing the clauses of assumption were in them. Simpson testifies that he did not, though as to the other grantors there is nothing shown in this respect, and we must presume that they knew what was incorporated in their deed. But even as to Simpson, the fact that he did not know the clause was in his deed will not prevent him now relying upon it and enforcing it, especially as his testimony shows that he was in some manner to be protected from the obligation which he took upon him-self by signing the notes. So, after allowing to defendants the full breadth of the principle of law stated above, we yet find no escape for them in this action.

III. Even to regard the action as in equity the result is the same. It is well settled that when a grantee assumes the grantor's debt to a third party as between grantor and grantee the grantee becomes the principal debtor, and the grantor his surety. It is also a rule of equity that whatever securities (and the grantee's assumption is a security) the surety holds against his principal can be made available to the creditor. This (when considered in equity) arises, not from contract but from equitable principles. Judge SHERWOOD says in *Burnside v. Fetzner*, 63 Mo. 107, that this "is too well settled, both on reason and authority, to admit of question." The following authorities present a comprehensive and lucid state-ment of this proposition, as applied to the obligatory promise which the surety grantor holds from the prin-cipal grantee: *Keller v. Ashford*, 133 U. S. 623-625; *Union Life Ins. Co. v. Hanford*, 143 U. S. 187; *Willard v. Worsham*, 76 Va. 401; *Osborne v. Cabell*, 77 Va. 467; *Crowell v. St. Barnibas*, 27 N. J. Eq. 650.

We are, in consequence of the foregoing, con-

strained to assert defendants' liability on the case made by the record. The judgment must, therefore, be affirmed. All concur.